NEIL R. ANAPOL, SBN #141764
LAW OFFICES OF NEIL R. ANAPOL
2550 Hollywood Way, Suite 202
Burbank, California 91505
Telephone: (818) 566-7355
Facsimile: (818) 566-7875

Attorneys for Plaintiffs Agnes Itzhaki, Rontal Development, LP, and Rontal Development, LLC

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA,**

**WESTERN DIVISION**

AGNES ITZHAKI, an individual; RONTAL DEVELOPMENT, LP, a California partnership; RONTAL DEVELOPMENT, LLC, a California limited liability company;

Plaintiffs,

vs.

UNITED STATES LIABILITY INSURANCE COMPANY, a Pennsylvania corporation, and DOES 1 through 100, inclusive;

Defendants.

Case No. 2:20-cv-11271 AB (Ex)

[*The Hon. Andre Birotte Jr.]*

DECLARATION OF AGNES ITZHAKI IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; EXHIBITS "A" AND "B"

Date: April 9, 2021
Time: 10:00 A.M.
Crtrm.: 7B

1. I, Agnes Itzhaki, declare as follows: I am a plaintiff in the above-entitled action. I have personal knowledge of the matters set forth herein, and if called as a witness, could and would testify competently thereto.

2. I am the general partner of Rontal Development, LP. Rontal Development, LP, owned several parcels of vacant desert land on Neuralia Road in California City, California, in 2018. A true and correct copy of the grant deed transferring ownership of

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

these parcels to Rontal Development, LP is attached hereto and incorporated herein as Exhibit "A."

3. The business of Rontal Development, LP, is owning vacant land. The parcels on Neuralia Road described in Exhibit "A" were never used for any industrial, agricultural, or commercial purpose since Rontal Development, LP, purchased this property in 1989.

4. In or about February 2018, I noticed that there was a buildup of broken bottles, mattresses, old tires, and other trash on the portion of the property adjacent to Neuralia Road. Because I was concerned about potential liability resulting from the trash and debris on the property, I decided to have it cleaned up.

5. In or about late February 2018, I asked Carolinda Fleming, the manager of Rontal Development, LP, to obtain a grubbing permit from California City. She called me on March 5, 2018, and told me that she had gone to the permit desk in city hall and requested a permit, but was told by Joe Barragan, the director of public works, that there was no such thing.

6. On or about March 12, 2018, acting in my capacity as general partner of Rontal Development, I contacted Lou Peralta about removing trash and debris from the property. I had known Lou Peralta for a number of years. He was a motorcycle race organizer. However, he occasionally picked up odd jobs doing grubbing work. Mr. Peralta was to work solely for Rontal Development, LP, on land owned by Rontal Development, LP. Mr. Peralta did no work for me personally.

7. I told Mr. Peralta that the specific scope of work included removal of trash and debris from the fifteen-acre parcel adjacent to Neuralia Road. He was also to water

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

the property. Before the work commenced, I discussed with Mr. Peralta the specific work that he was to perform and the parcel that I wanted grubbed. When I hired Mr. Peralta, I did not have any legal understanding of the difference between an independent contractor and an employee. I have no legal training, and I did not consult with an attorney concerning this issue before hiring Mr. Peralta.

8. On March 15, 2018 Mr. Peralta cleaned up the property. Mr. Peralta removed large items from the property, and he used a tractor to collect small debris into piles of trash. He also used a watering truck to keep the dust down.

9. Mr. Peralta told me that while he was grubbing the property, Mr. Barragan appeared at the property and informed him that the work was unpermitted. However, no stop-work order was issued. The city cited Rontal Development for the dust caused by the grubbing work, but Mr. Peralta corrected the problem the next day when he watered the property.

10. After Mr. Peralta grubbed the property and removed trash and debris, California City refused to allow him to burn the debris that he had collected or to put any more water down on the property. Between March 23, 2018 and April 12, 2018, I repeatedly attempted to obtain permission to burn the debris that Mr. Peralta had collected and to water the property to keep the dust down. Each time, California City denied Rontal Development, LP permission to do any further work on the property.

11. On March 23, 2018 Bruce Watkins, a consultant that Rontal Development, LP, hired to help with the permit issues, and I had a meeting with Bob Stockwell, the city manager of California City, because Mr. Barragan had prevented Rontal Development, LP from watering the property. Mr. Stockwell did not intervene at that time.

12. In May 2018, Rontal Development, LP, was cited by the Eastern Kern Air Pollution Control District ("EKACPD"). This occurred over a month after the automobile accident on Neuralia Road. I was unaware of EKAPCD and its regulations and definitions before the work performed by Mr. Peralta on Rontal Development, LP, property on March 15, 2018. Also, prior to hiring Mr. Peralta, I had no reason to believe that his work would cause excessive dust.

13. On July 5, 2018, after I found out about the April 12, 2018, automobile accident, I had a meeting with insurance broker Randle Frankel. During the meeting, I informed him about the accident. Mr. Frankel told me at that time that Rontal Development, LP, was not a named insured under the United States Liability Insurance Company policy that insured the property. The policy was in my name only. Mr. Frankel told me that because Rontal Development, LP, could be sued by the injured parties, he would attempt to have it added to the USLI policy as a named insured. I was unaware at that time that by doing so retroactively, USLI could use that as a reason to deny, reduce, or eliminate insurance coverage and USLI never informed me of this.

14. I also decided during the July 5, 2018, meeting with Mr. Frankel to place USLI on notice of the potential claim. Thereafter, USLI emailed a few questions to Mr. Frankel concerning the potential claim but did not interview me.

15. On July 10, 2019, I received service of summons and complaint in the *Takas v. City of California City* case. The same day, I emailed these documents to USLI and requested that USLI defend me. On July 24, 2019, USLI claims examiner Cheryl Hazard sent me an email asking questions regarding the grubbing work that Mr. Peralta

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and this Declaration is executed on March 16, 2021, at Los Angeles, California.

Agnes Itzhaki

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

# EXHIBIT "A"

(2)

BOOK 6355 PAGE 1198
RECORDED BY
GALE S. ENSTAD
KERN COUNTY, RECORDER

031309

1990 MAR -9 AM 8:00

RECORDING REQUESTED BY

HERITAGE TITLE COMPANY

AND WHEN RECORDED MAIL THIS DEED AND, UNLESS OTHERWISE SHOWN BELOW, MAIL TAX STATEMENTS TO:

Name RONTAL DEVELOPMENT, L.P./A C.L.P
Street Address c/o Agnes Itzhaki
705 North Camden Drive
City State Zip Beverly Hills, CA 90212

| | |
|---|---|
| ORS | 5.00 |
| MDEP | 1.00 |
| REC.FE | 3.00 |
| SV CHRGE | 9.00 |

#863690 C001 R01 T09:35

Title Order No. 83819-KS Escrow No. 9999

THIS SPACE FOR RECORDER'S USE

PDOR on last Deed
APN - 302-272-12-00-9 (H)
302-272-11-00-6 (G)
302-272-67-00-9 (A)
302-272-66-00-6 (B)

# GRANT DEED

| | |
|---|---|
| TTAX # | 3# |
| SV | 29.15 |
| SV CHRGE | 29.15 |

#863700 C001 R01 T09:35

5 OR
1 MD
LN
3 RF
NA

e | 4

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
DOCUMENTARY TRANSFER TAX is $ 29.15
☒ Computed on full value of property conveyed, or
☐ Computed on full value less value of liens or encumbrances remaining at time of sale, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
ARNOLD WOLPIN SOLE TRUSTEE OF THE WOLPIN FAMILY TRUST DATED JANUARY 8, 1987 AS TO PARCELS A,B,AND G AND THE ESTATE OF HARRIET WOLPIN, AS TO PARCEL H

hereby GRANT(S) to
RONTAL DEVELOPMENT, L. P., a California Limited Partnership /~~A CALIFORNIA LIMITED PARTNERSHIP~~

the following described real property in the City of California City
County of KERN State of California:

LEGAL DESCRIPTION AS PER EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

THE GRANT DEED IS BEING RECORDED CONCURRENTLY WITH TWO ADDITIONAL GRANT DEEDS IN ORDER TO CONVEY PARCEL A,B,C,D,E,F,G,H, TO ONE ENITY

COUNTY OF KERN TRANSFER TAX PAID STATE OF CALIFORNIA

THE WOLPIN FAMILY TRUST DATED JANUARY 8,1987

BY Arnold Wolpin, Trustee TTEE
THE ESTATE OF HARRIET WOLPIN

BY Arnold Wolpin

Dated DECEMBER 5, 1989

STATE OF CALIFORNIA
COUNTY OF Los Angeles } ss.
On february 6, 1990,
before me, the undersigned, a Notary Public in and for

ompany of Los Angeles

NTRAL AVENUE
LIFORNIA 91203
42-5800

FATCOLA

THIS DOCUMENT IS VALUABLE

RETAIN IN A SAFE PLACE

# GRANT DEED

EXHIBIT "A"

PARCEL A:

THE NORTHEAST QUARTER OF THE NORTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 15, TOWNSHIP 32 SOUTH, RANGE 37 EAST, MOUNT DIABLO MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF THE NORTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SAID SECTION.

PARCEL B:

THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF THE NORTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 15, TOWNSHIP 32 SOUTH, RANGE 37 EAST, MOUNT DIABLO MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL C:

THE NORTHWEST QUARTER OF THE NORTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 15, TOWNSHIP 32 SOUTH, RANGE 37 EAST, MOUNT DIABLO MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF.

AN EASEMENT FOR INGRESS, EGRESS, AND PUBLIC UTILITY PURPOSES TO BE USED IN COMMON WITH OTHERS OVER THE NORTHERLY 32 FEET AND OVER THE SOUTHERLY 32 FEET OF THE NORTHEAST QUARTER OF THE NORTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 15, TOWNSHIP 32 SOUTH, RANGE 37 EAST, MOUNT DIABLO MERIDIAN.

PARCEL D:

THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 15, TOWNSHIP 32 SOUTH, RANGE 37 SOUTH, MOUNT DIABLO MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF.

AN EASEMENT FOR INGRESS, EGRESS, AND PUBLIC UTILITY PURPOSES TO BE USED IN COMMON WITH OTHERS OVER THE NORTHERLY 32 FEET AND OVER THE SOUTHERLY 32 FEET OF THE NORTH HALF OF THE NORTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 15, TOWNSHIP 32 SOUTH, RANGE 37 EAST, MOUNT DIABLO MERIDIAN.

EXHIBIT "A" (CONTINUED)

PARCEL E:

THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 15, TOWNSHIP 32 SOUTH, RANGE 37 EAST, MOUNT DIABLO MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF.

AN EASEMENT FOR INGRESS, EGRESS, AND PUBLIC UTILITY PURPOSES TO BE USED IN COMMON WITH OTHERS OVER THE NORTHERLY 32 FEET AND THE SOUTHERLY 32 FEET OF THE NORTH HALF OF THE SOUTHEAST QUARTER OF SECTION 15, TOWNSHIP 32 SOUTH, RANGE 37 EAST, MOUNT DIABLO MERIDIAN.

EXCEPT OVER ANY PORTION INCLUDED WITHIN THE LINES OF PARCEL E ABOVE.

PARCEL F:

THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 15, TOWNSHIP 32 SOUTH, RANGE 37 EAST, MOUNT DIABLO MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF.

A NON-EXCLUSIVE EASEMENT TO BE USED IN COMMON WITH OTHERS OF THE SOUTHERLY 32 FEET OF THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 15, TOWNSHIP 32 SOUTH, RANGE 37 EAST, MOUNT DIABLO MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL G:

THE SOUTHEAST QUARTER OF THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 15, TOWNSHIP 32 SOUTH, RANGE 37 EAST, MOUNT DIABLO MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL H:

THE SOUTHWEST QUARTER OF THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 15, TOWNSHIP 32 SOUTH, RANGE 37 EAST, MOUNT DIABLO MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF.

AN EASEMENT FOR INGRESS, EGRESS, AND PUBLIC UTILITY PURPOSES TO BE USED IN COMMON WITH OTHERS OVER THE SOUTHERLY 32 FEET OF THE NORTH HALF OF THE NORTH HALF OF THE SOUTHEAST QUARTER OF SECTION 15, [illegible] RANGE 37 EAST, MOUNT DIABLO MERIDIAN.

# EXHIBIT “B”

August 5, 2019

**VIA EMAIL:aggieitzhaki@gmail.com**

Rontal Development LP
dba: The Agnes Itzhaki Living Trust
Established November 1990
Attn: Agnes Itzhaki
12334 Sunset Boulevard
Los Angeles, CA 90049

Re: ***Holly Takas et al. v. Rontal Development, LP et al.***
Kern County Superior Court Case No. BCV-19-101351

| | |
|---|---|
| Claim #: | K125159 |
| Insured: | Rontal Development LP dba: The Agnes Itzhaki Living Trust Established November 1990 |
| Policy #: | CL 1786660A |
| Policy Period: | December 8, 2017 to December 8, 2018 |
| Claimant: | Holly Takas, Paul Nielsen, Elijah Nielsen, Zoey Takas |
| Date of Loss: | April 18, 2018 |

Dear Ms. Itzhaki:

As you are aware, I am the Claims Examiner assigned to handle the above-referenced claim, which was tendered to United States Liability Insurance Company ("USLI") under Commercial General Liability Policy No. CL 1786660A (the "Policy") issued to Rontal Development LP dba: The Agnes Itzhaki Living Trust Established November 1990 (the "Insured"). This letter sets forth USLI's coverage position with respect to the above-referenced action (the "Action").

Please be advised that based on the information presently available to USLI, USLI has no duty to defend or indemnify the Insured or you under the Policy with respect to the Action because: (1) the damages alleged in the Action arose from operations performed by a contractor for the Insured, and are excluded by the Policy's Independent Contractors/Subcontractors Exclusion (form L 278); and (2) the damages alleged arose out of the presence of or exposure to severe dust, which constitutes a "pollutant" as that term is defined in the Policy, and are thus excluded by operation of the Policy's pollution exclusion. Furthermore, certain of the defendants named in the complaint, including Rontal Development and Rontal Development, LLC are not insureds under the Policy, and you are an insured only to the extent liability is asserted against you with respect to the conduct of the Insured's business.

Below are the facts and information upon which USLI has based its coverage determination. If, after reviewing this letter, you believe that USLI's understanding of the facts is incomplete or inaccurate, or there is any additional information you believe would bear on USLI's coverage analysis, please advise as soon as possible so that we may consider any new or different information and its effect, if any, on USLI's coverage position.

## FACTUAL BACKGROUND

This claim arises from an automobile accident that occurred on a roadway adjacent to a parcel of land owned by the Insured and listed in the Policy as the designated premises (the "Itzhaki Property"). On May 15, 2019, Holly Takas, Paul Nielsen, Elijah Nielsen, and Zoey Takas (collectively "Plaintiffs") filed a complaint in Kern County Superior Court against various defendants, including the Insured, you, the City of California City, and Lou Peralta. Through their complaint, Plaintiffs seek to recover damages arising from the death of Kody Arthur Nielsen, as well as for severe injuries to Paul Nielsen and Elijah Nielsen.

Plaintiffs allege that during the morning of April 12, 2018, wind conditions in the area of the Itzhaki Property became severe, causing dirt and dust particles to become airborne, significantly limiting visibility on Neuralia Road in California City adjacent to the Itzhaki Property. (Complaint at ¶ 20.) The complaint alleges that as many as 30 calls were made by citizens to various personnel of California City to warn of the danger, but the City took no steps to close the road or eliminate the dangerous conditions in any way. (Complaint at ¶¶ 21, 25.) Despite the wind, the complaint alleges that the visibility on Neuralia Road was clear except at the Itzhaki Property, where visibility had been reduced to 12 feet due to airborne dust, sand, and gravel blowing in the wind emanating from the Itzhaki Property. (Complaint at ¶ 22.) As a result of the limited visibility, the decedent was involved in a head-on motor vehicle collision on Neuralia Road adjacent to the Itzhaki Property, killing him and severely injuring his passengers, Paul Nielsen and Elijah Nielsen. (Complaint at ¶ 28.)

Plaintiffs allege that prior to the accident, on or about March 15, 2018, the Insured and Mr. Peralta graded the Itzhaki Property, removing the ground cover vegetation and loosening the soil. (Complaint at ¶ 18.) The complaint alleges that this grading was performed without a permit which led to a citation, and caused an excessive dust condition creating a road hazard. (*Id*.)

Due to Kody Arthur Nielsen's death, Plaintiffs claim that they have been deprived of the decedent's moral support, society care and comfort, and financial support, as well as loss of future earnings. (Complaint at ¶¶ 40-41.) Plaintiffs also seek to recover general damages for the injuries sustained by Paul Nielsen and Elijah Nielsen. (Complaint at ¶ 38.) The complaint also seeks punitive damages against the Insured. (Complaint at ¶ 50.)

During the course of USLI's investigation, USLI was provided with a series of e-mail messages from March 15, 2018 to April 12, 2018 between you, Bruce Watkins, Mr. Peralta, and the local government regarding grubbing permits and processes.

-On March 15, 2018 Bruce Watkins wrote to Bob Stockwell at the California City government office to advise of confusion regarding a permit for grubbing. Lou Peralta who was performing the grubbing, was advised that the work being done was not permitted without a permit application. Mr. Peralta advised Mr. Watkins that he had done grubbing around California City for years, and his understanding was that he did not need a permit. Mr. Watkins requested a meeting with Mr. Stockwell to discuss the permit issue.

-Lou Peralta attempted to get a permit but was advised he could not get a permit because he was not the owner

-In an April 12th email Bruce Watkins writes to Bob Stockwell advising that the property owner was told to contact the California Department of Fish and Wildlife, the Water Board and the Air Resources Board. This is a new process issued by the State of California. However, this procedure does not address the grubbed debris that is still on the land. Mr. Wakins requests a solution before the wind blows the debris any further.

Based on the foregoing e-mail messages, our recent communications, and other information that USLI has obtained through its investigation, USLI understands that the Insured actually retained Mr. Peralta to grub the Itzhaki Property (*i.e.*, to remove trees and shrubs, clean the property of trash, and water it down) rather than to grade it.

The e-mail messages indicate that the Insured was informed that the grubbing activity on the Itzhaki Property in March 2018 could not be conducted without a permit and that the Insured (through Mr. Watkins and others) were in communications with the local government about the permit application process.

You advised USLI that the citation referenced in the complaint was issued for land clearing without a permit.

Additionally, you have advised that there is no written contract between the Insured and Mr. Peralta, but that he has performed clearing services for the Insured at least twice, and clean-up services at least three times. Mr. Peralta has performed grubbing services for other properties owned by you and/or the Insured, and Mr. Peralta has performed grubbing for other parties all around California City for years. USLI understands that because Mr. Peralta was not the owner of the Itzhaki Property, the local government informed him in March 2018 that he could not obtain the relevant permitting papers and that he needed written permission from the owner to perform any clean-up, grubbing or grading, which written permission must be in Mr. Peralta's possession at all times. Over the past several years, the Insured has paid Mr. Peralta a total of $13,300, but it has not issued him either a W-2 or 1099 tax form.

USLI has also learned that the Insured was cited for violation of the Eastern Kern County Air Pollution Control District for fugitive dust. The violation occurred on February 11, 2018, but notice of the violation was not issued until May 11, 2018.

By summarizing the allegations above, USLI takes no position on the truth or falsity of those allegations.

## POLICY INFORMATION

USLI issued the Policy, effective from December 8, 2017 through December 8, 2018, to named insured Rontal Development LP dba: The Agnes Itzhaki Living Trust Established November 1990. The Policy provides Commercial General Liability coverage with limits of $1,000,000 per occurrence subject to a $2,000,000 aggregate.

The Policy's insuring agreement as set forth in form CG 00 01 (12/07) Commercial General Liability Coverage Form provides as follows:

> **SECTION 1 COVERAGES**
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1. Insuring Agreement**
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. …

The Policy's **Section II – Who Is An Insured** states, in pertinent part:

> 1. If you are designated in the Declarations as:
> ...
> b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

The Policy's Declarations page describes the insured's form of business as "Partnership".

The Policy contains the following exclusion, as amended by endorsement:

> **2. Exclusions**
>
> This insurance does not apply to:

…

**f. Pollution, Organic Pathogen, Silica, Asbestos and Lead**

(1) "Bodily injury" or "property damage"; …

arising directly, indirectly, in concurrence with or in any sequence out of the actual, alleged or threatened presence of or exposure to, ingestion, inhalation, absorption, contact with discharge, dispersal, seepage, release or escape of "pollutants", "organic pathogens", "silica", asbestos, or lead, whether or not any of the foregoing are (1) sudden, accidental or gradual in nature; (2) intentional; or (3) expected or intended from the standpoint of the insured.

The Policy also includes form L 278 (11/07) Independent Contractors/Subcontractors Exclusion, which is attached to the Policy, provides in relevant part:

It is agreed that this policy shall not apply to "bodily injury", "property damage", or "personal or advertising injury" arising out of the operations performed for any insured by any contractor(s) or acts or omissions of any insured in the selection, retention or supervision of any contractor(s).

…

Form L 532 (08/03) EXCLUSION – CONSTRUCTION OPERATIONS, which is included in the Policy, provides:

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury", or medical expenses arising out of any construction, "construction services", demolition, renovation or site preparation.

"Construction services" includes, but is not limited to, surveying, drafting, test borings, or inspections.

Furthermore, **Section V – Definitions** of the Policy, as amended by endorsement, provides the following relevant definitions:

3. "Bodily injury" means:

a. bodily injury,
b. sickness,
c. disease; or
d. mental anguish or emotional distress arising out of a., b., or c., above,

sustained by a person, including death resulting from any of these at any time.

…

15. "Pollutants" mean[s] any solid, liquid, gaseous, bacterial, fungal, electromagnetic, thermal or other substance that can be toxic or hazardous, cause irritation to animals or persons and/or cause contamination to property and the environment including smoke, vapor, soot, fumes, acids, alkalis, chemicals, toxic materials, "volatile organic compound" and gases therefrom, radon, combustion byproducts and waste. Specific examples identified as pollutants include, but are not limited to, diesel, kerosene, and other fuel oils … carbon monoxide, and other exhaust gases … mineral spirits, and other solvents … tetrachloroethylene, perchloroethylene (PERC), trichloroethylene (TCE), methylene chloroform, and other dry cleaning chemicals … chlorofluorocarbons, chlorinated hydrocarbons, adhesives, pesticides, insecticides … and all substances specifically listed, identified, or described by one or more of the following references: **Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) Priority List Hazardous Substances (1997 and all subsequent editions), Agency for Toxic Substances And Disease Registry ToxFAQs™, and/or U.S. Environmental Protection Agency EMCI Chemical References Complete Index**.

"Silica" means silica in any form and any of its derivatives, including but not limited to silica dust, silicon dioxide, crystalline silica, quartz, or non-crystalline (amorphous) silica.

## USLI'S COVERAGE POSITION

As more fully discussed below, USLI has no obligation to provide the Insured or you with a defense to the Action, or to indemnify the Insured or you relative to the Action.

First, the Policy's Independent Contractors/Subcontractors Exclusion (form L 278) bars coverage for damages arising out of operations performed for any insured by any contractor, or for acts or omissions of any insured in the selection of any contractor. Based on the information available to USLI, Mr. Peralta was a contractor who was retained by the Insured to perform grubbing services on the Itzhaki Property. USLI understands that Mr. Peralta has been performing grubbing services for other parties throughout California City for years, and his services have been retained by the Insured as needed. Because the damages alleged in the Action arose from operations performed for the Insured by a contractor, this exclusion bars coverage under the Policy for the Action.

Second, the Policy's pollution exclusion also precludes coverage for the Action, as the damages alleged arose out of the presence of or exposure to severe dust, which constitutes a "pollutant" as that term is defined in the Policy.

In addition to the Insured, the complaint names you as an individual, Rontal Development (a business entity of form unknown), and Rontal Development, LLC as defendants. The entities Rontal Development and Rontal Development, LLC are not insureds under the Policy. Furthermore, to the extent liability is asserted against you other than with respect to the conduct of the Insured's business, you are not an Insured under the Policy.

Coverage for the Action may be further limited or excluded entirely by other Policy provisions. For instance:

- To the extent that the damages alleged in the complaint arose from the grading or site preparation of the Itzhaki Property, coverage for the Action would also be barred under the Policy pursuant to the Construction Operations Exclusion (form L 532).

- To the extent punitive damages are awarded against the Insured, such damages are uninsurable under California law.

## **CONCLUSION**

USLI's coverage position is based on the information presently available to it. This letter is not, and should not be construed as, a waiver of any terms, conditions, exclusions or other policy provisions, of any insurance policy issued by USLI. The discussion above is not intended to be an exhaustive statement of every issue regarding the availability or scope of coverage under the Policy. USLI expressly reserves all its rights under the Policy, in law and in equity, to deny or limit coverage on the foregoing basis and to deny coverage on any such additional and alternative basis as may be subsequently discovered. If you have additional information which should be considered in our decision, please forward the information to pour attention.

If the Insured believes any aspect of this coverage claim has been wrongfully declined, it may seek review of USLI's decision by contacting the California Department of Insurance at the following address and telephone numbers:

California Department of Insurance
Claims Service Bureau
300 S. Spring Street, 11th Floor
Los Angeles, California 90013
(800) 927-HELP or (213) 897-8921

The statute of limitations in California for the Insured to bring suit against USLI is four years from the date of any loss caused by USLI. If the Insured believes USLI has

incorrectly declined coverage and it fails to bring suit within this period of time, its right to contest USLI's coverage decision is waived.

Should you have any questions or concerns regarding this matter, please do not hesitate to contact me.

Sincerely,



Cheryl Hazard
Claims Examiner
1-888-523-5545 Ext: 2221
chazard@usli.com

Copy to: Randy Frankel via email: Rfrankel@frankelinsurance.com