NEIL R. ANAPOL, SBN #141764
LAW OFFICES OF NEIL R. ANAPOL
2550 Hollywood Way, Suite 202
Burbank, California 91505
Telephone: (818) 566-7355
Facsimile: (818) 566-7875

Attorneys for Plaintiffs Agnes Itzhaki, Rontal Development, LP, and Rontal Development, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA,**

**WESTERN DIVISION**

AGNES ITZHAKI, an individual; RONTAL DEVELOPMENT, LP, a California partnership; RONTAL DEVELOPMENT, LLC, a California limited liability company;

Plaintiffs,

vs.

UNITED STATES LIABILITY INSURANCE COMPANY, a Pennsylvania corporation: and DOES 1 through 100, inclusive;

Defendants.

Case No. 2:20-cv-11271 AB (Ex)

[*The Hon. Andre Birotte Jr.]*

PLAINTIFFS AGNES ITZHAKI, RONTAL DEVELOPMENT, LP, AND RONTAL DEVELOPMENT, LLC'S AMENDED OPPOSITION TO UNITED STATES LIABILITY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND ATHORITIES; DECLARATION OF AGNES ITZHAKI; DECLARATION OF CAROLINDA FLEMING; DECLARATION OF RANDLE FRANKEL; DECLARATION OF AMATO EVAN; DECLARATION OF CHARLES MILLER

[Filed Concurrently With Plaintiffs' Statement of Controverted Facts and Conclusions of Law]

Date: April 9, 2021
Time: 10:00 A.M.
Crtrm.: 7B

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

## TABLE OF CONTENTS

**Table of Authorities**……………...……………………………….…………………..…ii-iv

I. INTRODUCTION AND SUMMARY OF THE ARGUMENT………..…..……...2

II. FACTUAL HISTORY………..…………….…………………...…………….5

III. DISCUSSION……….………..………………………….…….…….…..…….….…7

A. A Duty to Defend Exists When There Is a Potential for Coverage Under the Policy……………………………………….…………………7

B. USLI Owes Ms. Itzhaki A Duty to Defend Her in the *Takas* Action.

C. The Contractor Exclusion Does Not Negate Coverage……….……..………10

1. USLI Has Not Conclusively Proven that the *Takas* Action Arises Out of Operations Performed by any Contractor for any Insured…………………………..……………………...…11

2. USLI Has Not Conclusively Proven that Peralta Was A Contractor…………………………………………...…………13

3. The Contractor Exclusion Does Not Apply Because Peralta Did Not Have a Contractor's License……………………..…………14

D. USLI Cannot Rely on an Overly Broad Interpretation of the Pollution Exclusion to Negate Coverage……………....……………………15

1. Rules of Governing the Interpretation and Applicability of Exclusions………………………………..…………………….16

2. The USLI Policy Cannot Be Interpreted as Excluding Non-Industrial or Agricultural Business Activities That

Result in "Pollution." ……………………………………………...16

3. There is a Triable Issue of Fact Concerning Whether the Pollution Exclusion Applies, Given the Circumstances of the Motor Vehicle Collision……………………..…...…..………22

E. The Premises Limitation Endorsement Does Not Apply Because The "Accident" Occurred at the Insured Premises…..…….………..…..……23

IV. CONCLUSION……………………………….…...……………………26

## TABLE OF AUTHORITIES

**California Cases**

*Atlantic Mutual Ins. Co. v. J. Lamb, Inc.* 100 Cal. App. 4th 1017, 1039 (Cal. Ct. App. 2002) ……………………………………………………………4,8

*AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807 (Cal. 1990) ……………..…………16

*Barnett v. Fireman's Fund Ins. Co.*, 90 Cal.App.4th 500, 510 (Cal. Ct. App. 2001) ………………………………………………..………9

*Borello Sons Inc v. Department of Industrial Relations* (1989) 48 Cal.3d 341…….13

*Buss v. Superior Court*, 16 Cal. 4th 35, 59 (Cal. 1997). ………………………..……9

*CNA Casualty of Calif. v. Seaboard Surety Company*, 176 Cal.App.3d 598, 605, fn. 1 (Cal. Ct. App. 1986). ……………………………………...………………8

*Cold Creek Compost v. State Farm Fire and Cas. Co.* 156 Cal.App.4th 1469 (Cal. App. 2007) ……………………………………...…………………18

*Crane v. State Farm Fire & Cas. Co.*, 5 Cal.3d 112, 115 (1971)……….…..………...16



Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

*Dynamex Operations West, Inc. v. Superior Court* 4 Cal.5th 903 (Cal. 2018) ……13

*Everett v. State Farm General Ins. Co.* 162 Cal.App.4th 649, 663 (Cal. App. 2008)……12

*Foster-Gardner, Inc. v. National Union Fire Ins. Co*. 18 Cal.41h 857, 869 (Cal. 1998)……10

*Fresno Economy Import Used Cars, Inc. v. United States Fid. & Guar. Co*., 76 Cal.App.3d 272, 278 (Cal. Ct. App. 1977) ……7

*Garamendi v. Golden Eagle Ins. Co.* 127 Cal.App.4th 480 (Cal. App. 2005)

*Gray v. Zurich Ins. Co.*, 65 Cal.2d 263 (Cal. 1966) ……7,18

*Hartford Fire Ins. Co. v. Spartan Realty Int'l* 196 Cal. App. 3d 1320 (Cal. Ct. App. 1987) ……12

*Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081 (Cal. 1993) ……8,9

*MacKinnon v. Truck Ins. Exch.*, 31 Cal.4th 635, 648 (Cal. 2003) ……16

*Maryland Casualty Co. v. National American Ins. Co. of Calif.* 48 Cal.App.4th 1822, 1832 (Cal. 1996) ……10

*Montrose Chem. Corp. v. Sup.Ct.*, 6 Cal.4th 287, 300 (Cal. 1993) ……8,9,10

*Oil Base, Inc. v. Continental Casualty Co*., 271 Cal. App. 2d 378 (Cal. App. 1969) ……24

*Ortega Rock Quarry v. Golden Eagle Ins. Corp.*, 141Cal.App.4th 969 (Cal. App. 2006) ……18

*Sylla v. United States Fid. & Guar. Co*. 54 Cal. App. 3d 895,

127 Cal. Rptr. 38 (Cal.App. 1973) ……………………………...……………………24

*Waller v. Truck Ins. Exchange, Inc.* 11 Cal.4th 1, 16. (Cal. 1995) ………………..…8

**Federal Cases**

*Tsakopoulos v. American Manufacturers Mut. Ins. Co.* (E.D.Cal. Aug. 9, 2000, No. Civ. S990853 GEB JFM) 2003 WL 22595248………..……...………20, 21

**Other State Cases**

*Molton, Allen & Williams v. St. Paul Fire & Marine Ins. Co.*, 347 So. 2d 95, 99 (Ala. 1977) …………………………………………………...……...……21-22

**California Statutes**

California Labor Code section 2750.3……………………………………...………13

California Labor Code section 3351……………………………………………….....13

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION AND SUMMARY OF THE ARGUMENT**

United States Liability Insurance Company ("USLIC") owes a duty to defend plaintiff Agnes Itzhaki ("Ms. Itzhaki") in the underlying action entitled *Takas v. City of California City*, et al., Kern County Superior Court, Case No. BCV-19-101351 ("the *Takas* action").

The plaintiffs in the *Takas* action allege that they suffered bodily injury and the wrongful death of a family member on April 12, 2018, as a result of a motor vehicle accident. Plaintiffs allege that Ms. Itzhaki caused the accident by hiring Lou Peralta ("Peralta") to grub vacant land adjacent to the roadway on March 15, 2018. This grubbing allegedly stripped the land of vegetation and loosened the topsoil. Plaintiffs further allege that "neither the Itzhaki Defendants nor defendant Peralta took steps at any time to remedy this dangerous condition." Allegedly, on the date of the accident, wind picked up the dust from the Itzhaki property and blew it into the adjacent roadway, limiting visibility and causing the accident.

At the time of the accident, Ms. Itzhaki was insured under a commercial general liability policy issued by USLI. Rather than provide a defense, from the outset USLI looked for reasons not to find even potential coverage. Thus, USLI performed no investigation and simply concluded that (1) the accident arose out of Peralta's grubbing of the Itzhaki property on March 15, 2018; and (2) Peralta was an independent contractor who performed grubbing work for Ms. Itzhaki. ADF ¶1. Thus, USLI relied upon the independent contractor exclusion to deny coverage. USLI also concluded that because

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

the alleged cause of the accident was dust from the Itzhaki property, the pollution exclusion also eliminated even the possibility of coverage. ADF ¶2.

All of these conclusions were and are factually and legally incorrect. USLI never conclusively established either that Peralta was legally an independent contractor of Ms. Itzhaki, or that the accident arose out of Peralta's grubbing activities. In fact, Peralta was hired to perform grubbing work on behalf of the owner of the vacant land, Rontal Development, LP, not Ms. Itzhaki. ADF ¶3. Rontal Development, LP is not an insured under the policy. ADF¶4. Thus, the independent contractor exclusion, by its terms, does not apply. Moreover, the term "contractor" is ambiguous given that it could reasonably be interpreted to mean either anyone who works under contract, or anyone with a contractor's license. Construing the ambiguity against USLI, Peralta was not a contractor because he did not have a contractor's license.

USLI's reliance on the pollution exclusion is also misplaced. That exclusion eliminates coverage for bodily injury or property damage resulting from a laundry list of "pollutants" including silica, an ingredient of sand and dust. However, the USLI policy is silent and ambiguous concerning the nature of the activities that constitute "pollution."

As USLI would have it, any activity can be a polluting activity, but that definition would lead to absurd results. Ordinary lawn care by a homeowner could be viewed as pollution if dirt and organic material were stirred up in way that resulted in an accident. Even an accident caused by a lawnmower discharging a rock made of silica could be eliminated from coverage by USLI's misinterpretation of this exclusion.

All of the cases cited by USLI that considered the pollution exclusion dealt with industrial or agricultural activities that resulted in pollution. In this case, Peralta's

alleged pollution activity was cleaning up vacant land. Peralta's activities were not unlike yard work by a homeowner--not industrial or agricultural activities in furtherance of a business. Moreover, Peralta's work on the land occurred almost a month before the accident; there were 66.75 mile-per-hour winds at the time of the accident; and the dust in the air at that time came from sources other than the property he grubbed. ADF¶16. Thus, the accident did not arise out of Peralta's pollution activities because he did not engage in any, and because the accident was caused by the unique weather and dust conditions that occurred at that time.

In sum, before it denied coverage, USLI never proved -- and did not prove in its motion for summary judgment -- that the independent contractor or pollution exclusions apply in *all possible worlds*. *Atlantic Mutual Ins. Co. v. J. Lamb, Inc.* 100 Cal. App. 4th 1017, 1039 (Cal. Ct. App. 2002).

In its motion, USLI asserts for the first time that one of the reasons there is no coverage is because the policy contains a limitation that requires bodily injury or property damage to occur on the insured property. Once again, USLI's reliance on a policy limitation is misplaced. The premises limitation endorsement limits liability for bodily injury or property damage to occurrences that occur at the insured location. However, the term "occurrence" is defined to mean "an accident, including continuous or repeated exposure to substantially the same general conditions." This definition and California authority that interprets similar insurance policy provisions make clear that the "accident" in the context of this policy is the alleged grubbing activities and maintenance deficiencies that caused dust and dirt to become airborne on the day of the fatal collision on the adjacent roadway, not the automobile collision itself. Thus, the premises limitation endorsement

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

does not apply. Accordingly, this Court should deny USLI's motion for summary judgment.

## II.

## FACTUAL HISTORY

Sometime in late February 2018, Ms. Itzhaki noticed that there was a buildup of trash, old tires, old mattresses, and broken bottles on a property owned by Rontal Development, LP, in California City, California. ADF ¶5. Ms. Itzhaki had a conversation with Carolinda Fleming, the manager of Rontal Development, in late February 2018, during which Ms. Itzhaki instructed Ms. Fleming to obtain a grubbing permit on behalf of Rontal Development. ADF ¶6.

On March 5, 2018, Ms. Fleming went to the California City permit desk to obtain a grubbing permit. Instead of a grubbing permit, Ms. Fleming was given a multi-page form entitled "Commercial Industrial Building," listing dozens of inapplicable tasks. When Ms. Fleming pointed out that the form did not appear to be a grubbing permit, Joe Barragan, the director of public works, told Ms. Fleming that there was no such thing as a grubbing permit in California City. ADF¶7. Soon thereafter, Ms. Fleming reported to Ms. Itzhaki that California City does not require a grubbing permit. ADF¶8.

On or about March 12, 2018, Ms. Itzhaki, acting as general manager of Rontal Development, LP, hired Peralta to grub the property. The specific scope of work included removal of trash and debris from a fifteen-acre parcel adjacent to Neuralia Road. Prior to commencing the work, Ms. Itzhaki discussed with Peralta the specific work that he was to perform and the parcel that she wanted grubbed. ADF¶9. Rontal Development, LP was in the business of owning vacant land. The land at issue in this case was not used

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

for industrial or agricultural purposes. ADF¶10. Peralta's primary occupation was organizing motorcycle races, not grubbing or maintaining land. ADF¶11.

On March 15, 2018, Peralta cleaned up the property. Peralta removed large items from the property, and he used a tractor to collect small debris into piles of trash. He also used a watering truck to keep the dust down. ADF¶12 and 13.

On March 23, 2018 Ms. Itzhaki and Bruce Watkins, a consultant, had a meeting with Bob Stockwell, the city manager, because Mr. Barragan had prevented Rontal from watering the property. ADF¶14. Between March 23, 2018 and April 12, 2018, Ms. Itzhaki repeatedly attempted to obtain permission to burn the debris that Peralta had collected and to water the property to keep the dust down. Each time, California City denied Rontal Development permission to do any further work on the property. ADF¶15.

On April 12, 2018, at around 5:00 pm, two vehicles traveling in opposite directions on Neuralia Road collided head-on, killing the driver of one of the vehicles and causing serious injuries to the passengers. At the time of the accident, wind speeds in the area were as high as 66.75 mph. Dust from the entire surrounding area became airborne due to the strong winds, limiting visibility on Neuralia Road. ADF¶16.

At the time of the accident, Ms. Itzhaki was insured under a commercial general liability insurance policy issued to her by USLI. Ms. Itzhaki was the only named insured on the policy. ADF¶4.

On July 5, 2018, Ms. Itzhaki discussed the potential liability that arose out of the accident with her insurance broker, Randle Frankel. During the conversation, Mr. Frankel noticed that Rontal Development, LP, was not listed as an insured under the policy. Mr. Frankel contacted USLI and requested that it add Rontal Development, LP,

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

to the policy, which USLI purported to do *retroactively*. ADF¶17. However, this retroactive change to the policy, which was intended to provide coverage for Rontal, if effective, could have eliminated coverage for all insureds, including Ms. Itzhaki.

Also on July 5, 2018, through her broker, Ms. Itzhaki tendered her defense of the *Takas* case to USLI, and USLI assigned an adjuster. Other than asking Ms. Itzhaki's insurance broker a few questions concerning the circumstances of the loss, USLI did not undertake any investigation of the claim at that time. ADF¶18.

Shortly after receiving service of process on July 10, 2019, Ms. Itzhaki emailed the summons and complaint to USLI and requested that USLI defend her. On July 24, 2019, USLI claims examiner Cheryl Hazard sent Ms. Itzhaki an email asking her questions regarding the grubbing work on the property a month prior to the accident. Ms. Itzhaki responded to Ms. Hazard's email the following day. ADF¶19. Other than receiving the complaint and Ms. Itzhaki's email of July 25, 2019, USLI conducted no investigation of the loss prior to August 5, 2019, when it declined coverage. ADF¶20.

## III.

## DISCUSSION

### A. A Duty to Defend Exists When There Is a Potential for Coverage Under the Policy.

An insurer "must defend a suit which ***potentially*** seeks damages within the coverage of the policy." *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263 (Cal. 1966). (Emphasis in original.) Stated differently, a duty to defend is imposed whenever the insurer ascertains facts which give rise to the possibility of coverage. *Fresno Economy Import Used Cars, Inc. v. United States Fid. & Guar. Co.*, 76 Cal.App.3d 272, 278 (Cal. Ct. App. 1977). "(A)

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

bare 'potential' or possibility of coverage is the trigger of a defense duty ... California courts have used the terms 'possibility' and 'potential' interchangeably, and we see no difference between them." *Montrose Chem. Corp. v. Sup.Ct.*, 6 Cal.4th 287, 300 (Cal. 1993).

Any doubts as to whether the facts give rise to a duty to defend are resolved in the insured's favor. *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081 (Cal. 1993). "Where there is doubt as to whether the duty to defend exists, the doubt should be resolved in favor of the insured and against the insurer." *Eichler Homes, Inc. v. Underwriters at Lloyd's, London*, 238 Cal.App.2d 532, 538 (Cal. Ct. App. 1965), *CNA Casualty of Calif. v. Seaboard Surety Company*, 176 Cal.App.3d 598, 605, fn. 1 (Cal. Ct. App. 1986). (Emphasis added.)

An insurer may only defeat an existing potential for coverage by undisputed facts that conclusively negate such coverage. This is particularly true where the insurer seeks to defeat coverage by reliance on an exclusion. An insurer may rely on an exclusion to deny coverage only if it provides conclusive evidence demonstrating that the exclusion applies. *Waller v. Truck Ins. Exchange, Inc*. 11 Cal.4th 1, 16. (Cal. 1995). Exclusions are narrowly construed and the insurer bears burden of proving their application. Thus, an insurer that wishes to rely on an exclusion has the burden of proving through conclusive evidence that the exclusion applies in *all possible worlds*. *Atlantic Mutual Ins. Co. v. J. Lamb, Inc.* 100 Cal. App. 4th 1017, 1039 (Cal. Ct. App. 2002). (Emphasis added.)

When an insured party is sued for conduct which is potentially covered under its insurance policy, the insurer has a contractual obligation to provide a complete and prompt defense. *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (Cal. 1993). As noted in the *Buss* decision, "To defend meaningfully, [an insurer] must defend immediately.

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

To defend immediately, it must defend entirely." *Buss v. Superior Court*, 16 Cal. 4th 35, 59 (Cal. 1997).

"The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Horace Mann, supra,* 4 Cal.4th at 1081. The allegations in the underlying complaint where there is a potential for coverage need not predominate to trigger the insurer's duty to defend. *Id.* at 1084. "The duty to defend arises when the facts alleged in the underlying complaint give rise to a potentially covered claim regardless of the technical legal cause of action pleaded by the third party." *Barnett v. Fireman's Fund Ins. Co*., 90 Cal.App.4th 500, 510 (Cal. Ct. App. 2001). (Emphasis added.) Even if a single claim in a multicount complaint is potentially covered, the insurer must defend the entire action. *Buss v. Sup.Ct. (Transamerica Ins. Co.*) 16 Cal.4111 35, 48 (Cal. 1997).

The insurer is relieved of its duty to defend only if the complaint "can by no conceivable theory raise a single issue which could bring it within the policy coverage." *Gray, supra*, 65 Cal.3d at 276. The only burden on the insured is to make a showing that the claim may fall within policy coverage. *Montrose, supra,* 6 Cal.4th at 300. The existence of a disputed fact is determinative of coverage and establishes a duty to defend. Id. at 300-301.

> [T]he insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot. Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to

eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales. *Montrose, supra*, 6 Cal.4th at 300.

The insurer also "has a duty to defend when the policy is ambiguous and the insured would reasonably expect the insurer to defend ... against the suit based on the nature and kind of risk covered by the policy." *Foster-Gardner, Inc. v. National Union Fire Ins. Co.* 18 Cal.41h 857, 869 (Cal. 1998).

Additionally, on a motion for summary judgment on the insurer's duty to defend, the insurer must be able to negate coverage as a matter of law. *Maryland Casualty Co. v. National American Ins. Co. of Calif.* 48 Cal.App.4th 1822, 1832 (Cal. 1996).

Finally, the existence of a triable issue of material of fact on an insurer's motion for summary judgment on the duty to defend establishes that the insurer has a duty to defend the insured. *Montrose, supra,* 6 Cal.4th at 30 l. Thus, denying USLI's Motion for Summary Judgment establishes the duty to defend Ms. Itzhaki.

**B. USLI Owes Ms. Itzhaki A Duty to Defend Her in the *Takas* Action.**

The USLI policy under which Ms. Itzhaki was insured provides: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages." The *Takas* lawsuit indisputably amounts to a claim for bodily injury. Accordingly, USLI owes Ms. Itzhaki a duty to defend, unless an exclusion eliminates even the possibility of coverage. As will be demonstrated below, no exclusions apply at all.

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

**C. The Contractor Exclusion Does Not Negate Coverage.**

**1. USLI Has Not Conclusively Proven that the *Takas* Action Arises Out of Operations Performed by any Contractor for any Insured.**

The contractor exclusion in the USLI policy provides:

It is agreed that this policy shall not apply to "bodily injury", "property damage", or "personal and advertising injury" *arising out of the operations performed for any insured by any contractor(s)* or acts or omissions of any insured in the selection, retention or supervision of any contractor(s). (Emphasis added.)

It is undisputed that Peralta was hired to perform grubbing services on a plot of vacant land owned by Rontal Development, LP. ADF¶3. Thus, Peralta was performing operations for Rontal Development, LP, the landowner. Peralta was not performing operations for Ms. Itzhaki because she is not the owner of the land. This makes a difference because only Ms. Itzhaki, and not Rontal Development LP, is an insured under the policy. ADF¶4 . Thus, even assuming Peralta was a contractor--which he was not--his operations (grubbing work) were not performed for *any insured*.

It is anticipated that USLI will argue that Rontal Development, LP, was an insured under the policy because the policy declarations were subsequently amended to Rontal as an insured. See Connor Decl. ¶ 4 and Exh. A at Bates Nos. USLI 0045 and USLI 0097 to USLI 0099. However, there is a triable issue of fact concerning the validity of that purported endorsement. The endorsement, which was made on July 5, 2018 (almost three months after the accident) purports to add Rontal Development, LP, as named insured effective December 8, 2017--*several months prior to the accident*.

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

Insurers are not permitted to change the terms and conditions of liability insurance policies after an occurrence in a way that eliminates coverage. See *Hartford Fire Ins. Co. v. Spartan Realty Int'l* 196 Cal. App. 3d 1320 (Cal. Ct. App. 1987). Moreover, once USLI amended the endorsement purporting to add Rontal Development, LP, as an additional named insured, there was no notice in the declarations page or anywhere else that coverage was being reduced or eliminated. California law requires that when an insurance company changes, reduces, or limits the coverage or benefits of a policy, the notice of such change must "be provided in a 'plain, clear and conspicuous writing.'" *Everett v. State Farm General Ins. Co.* 162 Cal.App.4th 649, 663 (Cal. App. 2008). In this case there was no writing at all. Given that this change was made retroactively after the accident had occurred, the change in coverage was not theoretical or conjectural. Adding Rontal Development, LP, at least arguably made the independent contractor exclusion applicable, thereby destroying coverage. Yet USLI did not bother to provide Ms. Itzhaki notice of the reduction in coverage.

There is at least a triable issue of fact concerning the validity of the post-accident endorsement that purported to add Rontal Development, LP, to the policy. Ms. Itzhaki did not intend to destroy coverage by adding Rontal Development, and only did so after being advised by her insurance broker that it was in her interest – which it clearly was not. See ADF¶17. Accordingly, because a jury could find that this endorsement is not valid, there is a triable issue of fact concerning the applicability of the contractor exclusion.

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

**2. USLI Has Not Conclusively Proven that Peralta Was A Contractor.**

In order for the contractor exclusion to apply, USLI has to prove that Peralta was an independent contractor – not an employee. USLI does not even come close to proving this contention.

Although USLI attempts to convince this Court that Peralta was an independent contractor, citing the factors enumerated in *Borello Sons Inc v. Department of Industrial Relations* (1989) 48 Cal.3d 341, that case has been superseded by *Dynamex Operations West, Inc. v. Superior Court* 4 Cal.5th 903 (Cal. 2018), and AB5 (California Labor Code sections 2750.3 and 3351), which cuts the eleven factors in *Borello* down to three. Those factors are: (A) The worker is free from the control and direction of the hirer in connection with the performance of the work; (B) The worker performs work that is outside the usual course of the hiring entity's business; and (C) The worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for the hiring entity.

In this case, none of these factors apply. Ms. Itzhaki had substantial input concerning the nature, scope, and methods of the grubbing work. ADF ¶9. Rontal Development, LP, the owner of the parcel, is in the business of owning vacant land. ADF¶10. Thus, the work was not outside the usual course of the hiring entity's business. Finally, Peralta was not independently established as a grubber or grader of vacant land. Peralta was a motorcycle racing organizer. ADF ¶11.

While USLI might prefer to rely on Ms. Itzhaki's lay opinion that Peralta was a contractor, employment status is a question of law upon which Ms. Itzhaki was unqualified

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

to opine. Accordingly, her lay opinion about Peralta's employment status is irrelevant given that as a matter of law, he qualified an employee of Rontal Development, LP. Accordingly, the contractor exclusion does not apply.

**3. The Contractor Exclusion Does Not Apply Because Peralta Did Not Have a Contractor's License.**

Throughout its motion for summary judgment, USLI refers to the contractor exclusion as the "independent" contractor exclusion. Indeed, the title of this exclusion uses the word "independent" to modify "contractor". However, the language of the exclusion itself only refers to "contractors," not "*independent* contractors". Moreover, the title of the exclusion and the "Separation of Insureds" clause refers to "subcontractors." If it was necessary to specifically exclude "subcontractors" who are themselves "contractors" because they work under contract, the term "contractor" must mean "building contractor," or something similar which requires a contractor's license.

Thus, the term "contractor" could be interpreted as any person who performs work under a contract, including people who perform yard work, pool maintenance, house-keepers, and anyone else who works under contract for any insured. The term "contractor" could also be interpreted as anyone who has an active license with the California State Contractors Licensing Board. The policy's use of the term "subcontractor" in the title of the exclusion and elsewhere in the policy supports the latter interpretation.

The Merriam-Webster dictionary defines "contractor" as: "one that contracts or is party to a contract: such as a: one that contracts to perform work or provide supplies b: one that contracts to erect buildings". See https://www.merriam-webster.com/dictionary/

contractor. Both definitions are commonly understood and correct. However, given the ambiguity created by the use of the undefined term "contractor," and applying the rule that ambiguities in insurance policies must be construed against the insurer, the later definition should apply. Because Peralta did not have a contractor's license, and did not purport to erect buildings (ADF ¶11), the contractor exclusion does not eliminate coverage even if he was not an employee, and even if he was performing work on behalf of an insured. ADF¶26.

D. **USLI Cannot Rely on an Overly Broad Interpretation of the Pollution Exclusion to Negate Coverage.**

USLI next attempts to show there is not even the possibility of coverage by citing the pollution exclusion. That exclusion purports to eliminate coverage for bodily injury or property damage:

> "[A]rising directly, indirectly, in concurrence with or in any sequence out of the actual, alleged or threatened presence of or exposure to, ingestion, inhalation, absorption, contact with discharge, dispersal, seepage, release or escape of "pollutants", "organic pathogens", "silica", asbestos, or lead, whether or not any of the foregoing are (1) sudden, accidental or gradual in nature; (2) intentional; or (3) expected or intended from the standpoint of the insured.
>
> This exclusion applies even if the "pollutant", "organic pathogen", "silica", asbestos, or lead has a function in, or is used by you in your business, operations, premises, site or location.

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

**1. Rules of Governing the Interpretation and Applicability of Exclusions.**

As noted above, exclusions are to be construed narrowly, and the insurer bears the burden of proving their application. *MacKinnon v. Truck Ins. Exch*., 31 Cal.4th 635, 648 (Cal. 2003). California courts employ a three-part analysis when interpreting insurance policies. Courts must first look at the plain meaning of the policy language. Courts then consider the insured's reasonable expectation of coverage. If the ambiguity is not resolved by looking at the language of the policy and the insured's reasonable expectation, then the policy is strictly construed against the insurer. *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807 (Cal. 1990). In applying the rules of contract interpretation, the Court must first read the policy "as a layman would read it and not as it might be analyzed by an attorney or insurance expert." *Crane v. State Farm Fire & Cas. Co.*, 5 Cal.3d 112, 115 (1971).

2. **The USLI Policy Cannot Be Interpreted as Excluding Non-Industrial or Agricultural Business Activities That Result in "Pollution."**

USLI spends nine pages of its Memorandum of Points and Authorities attempting to prove that dust, sand, or other natural materials could constitute pollutants under the policy at issue in this case. That is undoubtedly true. It is also beside the point.

In attempting to understand the plain meaning of the pollution exclusion, the issue is not what kinds of *materials* constitute pollutants, but rather what kinds of *activities* constitute polluting. The Merriam-Webster dictionary defines "pollution" as "the action of polluting especially by environmental contamination with man-made waste." See https://www.merriam-webster.com/dictionary/pollution.

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

Although the policy is silent and therefore ambiguous as to the nature of the conduct that constitutes pollution, the answer cannot be *any and all* conduct. Given the broad definition of the term "pollutant" as any substance "that can be toxic or hazardous, cause irritation to animals or persons and/or cause contamination to property and the environment..." if any alleged conduct could amount to an act of polluting, most of the coverage the policy purports to provide -- and a policyholder would reasonably expect -- would be eliminated.

An irritant is defined as "something that irritates or excites," or "to provoke impatience, anger, or displeasure in." https://www.merriam-webster.com/dictionary/irritant and https://www.merriam-webster.com/dictionary/irritate. The noun version of irritant, a verb, is likewise defined as "subjected to irritation; esp.: roughened, reddened, or inflamed by an irritant." (Id.) Similarly, the word contaminant means "to soil, stain, corrupt, or infect by contact or association." It is readily apparent that a literal interpretation of these terms would have profound adverse effects on coverage. For example, the mere release of water from one neighborhood yard onto another could be defined as an irritant, and thereby excluded. The inadvertent spraying of dish-washing soap into the eye of another could be defined as a contaminant, and thereby excluded from coverage.

If natural materials such as dust and organic debris are pollutants, the act of raking or using a leaf blower could amount to the act of polluting if the dust and debris ended up on a neighbor's property and caused damage. The pollution exclusion contained in the USLI policy was intended to exclude from coverage pollution that results from industrial or agriculture business activities, not the by-products of land upkeep and maintenance. See ADF ¶21.

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

With this in mind, all of the cases cited by USLI in support of its overly broad interpretation of the pollution exclusion do not apply. For example, *Garamendi v. Golden Eagle Ins. Co.* 127 Cal.App.4th 480 (Cal.App.2005) involved silica dust which was dispersed as a by-product of *industrial sandblasting*. In *Ortega Rock Quarry v. Golden Eagle Ins. Corp.*, 141Cal.App.4th 969 (Cal. App. 2006) the operator of a rock quarry placed fill dirt from the quarry along a road that it needed to maintain access to the quarry. The fill dirt constituted pollution under the terms of the policy, not because of its chemical composition, but because the plaintiff's industrial/business activities degraded the environment.

In *Cold Creek Compost v. State Farm Fire and Cas. Co.* 156 Cal.App.4th 1469 (Cal. App. 2007), the insured operated a facility – as part of its business – that composted organic materials, including animal waste. In that case, the pollution exclusion precluded coverage for a lawsuit brought by neighbors alleging nuisance. Again, the issue was not the nature of the materials; organic materials may be pollutants. The determining factor was that the act of creating the pollution was part and parcel to the insured's agricultural/business activities. USLI did not cite a single case where non-industrial or non-agricultural business activities were found by a court to constitute the act of pollution.

In the instant case, the parcel of land that Peralta grubbed was vacant. There were no ongoing business or agricultural activities on the land. See ADF ¶10. The work performed by Peralta was not conceptually different than a homeowner raking leaves, mowing the lawn, or digging up a garden in preparation for planting. Such activities would never be understood by a layperson -- or anyone else -- as polluting activities, even if the result was sand, dust, and organic materials escaping the property and causing damage nearby.

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

The policy is ambiguous because it does not say anything about the kinds of activities that constitute acts of polluting. Turning to the second rule of insurance contract interpretation – to give effect to the insured's reasonable expectations of coverage – policyholders would expect that cases like *Takas* would be covered because the alleged conduct, grubbing, is not industrial or agricultural activity by its nature. Garden-variety yard work is simply not what policyholders would understand to be "pollution." ADF¶24.

USLI might respond by arguing that unlike the activities in those examples, Ms. Itzhaki was required to obtain a permit to perform grubbing work on the property. However, although Ms. Itzhaki made an effort to obtain a permit before performing any work on the property, Rontal's manager was told by California City's director of public works that no permit was required. ADF¶7 and 8. Thus, Ms. Itzhaki's reasonable expectations as a policyholder would have been to view grubbing work as an activity that did not implicate the industrial or agricultural pollution exclusion. One does not need a permit to mow their own lawn. Ms. Itzhaki was told by the California City permitting authority that she did not need permit to remove trash and debris from the Rontal property. ADF¶7,8.

USLI asserts that because the Eastern Kern Air Pollution Control District ("EKAPCD") Rule 402 includes grubbing in its definition of outdoor fugitive dust-producing activities, Ms. Itzhaki reasonably should have expected that this activity constituted pollution as defined by the USLI policy. Moreover, USLI argues that because EKAPCD cited Ms. Itzhaki *after* the accident for excess fugitive dust, Ms. Itzhaki somehow should have known before Peralta's grubbing work that his activities amounted

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

to pollution for insurance coverage purposes, or that Peralta's work would cause fugitive dust.

A similar argument was made by an insurer and rejected by a United States District Court in *Tsakopoulos v. American Manufacturers Mut. Ins. Co*. (E.D.Cal. Aug. 9, 2000, No. Civ. S990853 GEB JFM) 2003 WL 22595248. In that case, an insurance company sought to apply the pollution exclusion to plaintiff's plowing activities which caused dredged or fill material to be discharged into waters of the United States.

The insurer argued that the plaintiff could not reasonably have expected the policy to cover soil discharged into waters of the United States, because of his familiarity with the Clean Water Act and his repeated interactions with government agencies which enforce the Clean Water Act and which consistently had asserted that the Clean Water Act required that plaintiff obtain a permit for soil discharges that might occur during his plowing activities.

In rejecting that argument, the Court states:

> Defendants have not shown how the CWA's definition of "pollutant" has any relevance to the reasonableness of Tsakopoulos's expectation of coverage under the policies. Although Defendants argue that Tsakopoulos's knowledge of the government's interpretation of the CWA is relevant to the objective reasonableness of his construction of the insurance policies, that argument fails to adequately consider how Tsakopoulos could have reasonably interpreted the disputed definition of "pollutants" in this context, and the intended function of the pollution exclusion in the policies. Defendants have not shown that Tsakopoulos's expectation of coverage under the CGL

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

insurance policies was objectively unreasonable. Since coverage for the unpermitted discharges of soil "is consistent with the insured's objectively reasonable expectations" of coverage, the ambiguity of the definition of "pollutants" in this context must be resolved against Defendants. *Id.* at *3.

The District Court in the *Tsakopoulos* case also observes that the pollution exclusion may be unambiguous in one context and ambiguous in another context. *Tsakopoulos, supra*, 2003 WL 22595248 at p. *6. The pollution exclusion has been held to be unambiguous in covering discharges of "acids, alkalis and toxic chemicals," but ambiguous as to discharges of "natural materials."

In *Molton, Allen & Williams v. St. Paul Fire & Marine Ins. Co.*, 347 So. 2d 95, 99 (Ala. 1977), the insured was a developer who was constructing roads in a new development situated uphill from neighboring parcels. *Id*. at 347 So. 2d at 96. After the roadways were cleared and cut, but before they were paved, rainfall washed over the roadways and carried "sandstone and sandstone-type materials found naturally in the earth," which the rainwater had broken down into sand, onto the neighboring parcels, damaging them. *Id.* at 96-97. The Court rejected the insurer's argument that a pollution exclusion substantially similar to the one in this case eliminated coverage for the damage to the neighboring parcels, stating:

> While a liberal construction of the 'pollution exclusion' would include the damage allegedly caused by [the insured], the clause is not free from ambiguity. It is believed that the intent of the 'pollution exclusion' clause was to eliminate coverage for damages arising out of pollution or contamination by *industry-related activities*. The use of specific *industry-related irritants*,

> *contaminants and pollutants* seem to indicate this was the reason for the exclusion. . . . The clause here is ambiguous. *Id.* at 99. (Emphasis added.)

The drafting history of the USLI absolute exclusion for pollution exclusion similarly proves that it was intended to apply to traditional industrial pollution. See ADF¶22,23.

**3. There is a Triable Issue of Fact Concerning Whether the Pollution Exclusion Applies, Given the Circumstances of the Motor Vehicle Collision.**

By focusing on the materials that constitute pollutants, rather than the alleged activities that resulted in "pollution," USLI avoids dealing with its failure to investigate or consider what really happened in this case, as opposed to what the *Takas* plaintiffs alleged. In *Takas*, the plaintiffs allege that Peralta's grubbing activities disturbed the topsoil, resulting in dust which blew onto the roadway, obscuring vision and causing the accident.

But that is not what happened. Peralta grubbed the property on March 15, 2018. The accident occurred on April 12, 2018, almost a month later. According to Dr. Amato T. Evan, Director, Climate, Atmospheric Science, Physical Oceanography Division, Scripps Institution of Oceanography, University of California San Diego, there was low visibility at the time of the accident because there was: (1) exceptionally high wind conditions; and (2) a large number of wind-blown dust sources upwind of the accident site, including unpaved roads, an unpaved airport, Rogers (dry) Lake, and a source at the base of the Tehachapi Mountains which is most likely an alluvial fan. ADF ¶16. Dr. Evan determined that at that time of the accident, there were wind gusts as high as 66.75 mph, and this was the highest wind speed on record that year. ADF¶16.

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

This matters because Peralta's grubbing activities should not be viewed as pollution activities in light of the attenuated or nonexistent connection between what he did a month earlier and the resulting accident. The accident was caused by exceptionally high winds picking up loose dirt *from the entire surrounding area*, not just the property, and by a careless driver who did not see any reason to slow down even though he could not see where he was going.

To apply the pollution exclusion in this case would be comparable to applying the pollution exclusion to a homeowner whose home was hit by a tornado. Although the debris from the house might constitute pollutants pursuant to the "absolute" pollutions exclusion in USLI's policy, the act of building a structure is not a polluting activity, even if the debris might amount to "pollution" after the tornado hit. Such accidents and injuries arise out of weather conditions, not polluting activities. Thus, the pollution exclusion does not apply.

### E. The Premises Limitation Endorsement Does Not Apply Because The "Accident" Occurred at the Insured Premises.

USLI argues that it may deny coverage because the policy contains a premises limitation endorsement which states that "This insurance applies to 'bodily injury' and 'property damage' only if: (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place on or within the perimeter of the premises, site(s) or location(s) scheduled above." The policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The term "accident" is not defined by the policy. USLI asserts that the term "accident" means the injury-causing event, which in this case was a motor vehicle collision. However, the term "accident" is ambiguous and could reasonably be interpreted as the cause of the

accident, which in this case is alleged to be Peralta's grubbing activities and subsequent failure to control the dust which allegedly reduced visibility, causing the fatal collision.

A long line of cases support interpreting "accident" as the cause of the loss. In *Oil Base, Inc. v. Continental Casualty Co*., 271 Cal. App. 2d 378 (Cal. App. 1969), an action was brought against the manufacturer of drilling mud that it manufactured and sold in California, which later caught fire by spontaneous combustion in a warehouse in Venezuela. The coverage provided by the manufacturer's liability policy was limited to accidents that occurred within the United States. In concluding that the policy provided coverage because the cause of the injury (the sale of the drilling mud) occurred in the United States, the Court states: [A]s commonly used in liability insurance policies, the word 'accident' is predicated of an occurrence which is the cause of the injury. *That is to say, as used in liability insurance contracts, the word is employed to denote the cause, rather than the effect*." *Id.* at 387. (Emphasis in the original).

Similarly in *Sylla v. United States Fid. & Guar. Co*. 54 Cal. App. 3d 895, 127 Cal. Rptr. 38 (Cal.App. 1973) an automobile dealer was sued by a customer who alleged that the dealer sold him a defective vehicle and that this defect caused an accident. The sale occurred during the policy period, but the car accident occurred after the policy period. The court of appeal held that the term "accident" meant the sale of the defective vehicle, not the subsequent collision. Thus, the accident occurred within the policy period and the insurer owed the automobile dealer a defense to the injured customer's lawsuit.

In this case the *Takas* plaintiffs allege that the conduct that caused the accident was Peralta's grubbing of the property, which loosened the topsoil, and his failure to take any steps to abate the problem prior to the collision. Thus, the alleged cause of the injury

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

occurred within the perimeter of property, even though the resulting injury and death occurred adjacent to it.

USLI attempts to define "accident" as the location where the injury occurred. This should not be permitted for two reasons. First, USLI's approach would violate the policyholder's reasonable expectation of coverage. One who buys a liability insurance policy for vacant land would reasonably expect that an accident that allegedly occurred as a result of maintaining that land would be covered.

If USLI is permitted to interpret its policy in this way, USLI's liability policies would not provide coverage in cases where a fire starts on a policyholder's land and then spreads to adjacent parcels. Ironically, a portion of the pollution exclusion suggests the opposite intent. That portion reads:

> This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated: (1) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste.

In other words, hostile fire that *originates* on the premises and causes bodily injury or property damage off the premises is covered unless the premises is or was used for the handling, storage, disposal, processing or treatment of waste.

The pollution exclusion also states: "This exclusion does not apply to 'bodily injury' or 'property damage' arising from the consumption of food products intended for human consumption." If the policy provides coverage for bodily injury arising from the consumption of food products, it is a safe bet that the food products do not have to be

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

consumed on the premises for there to be coverage. Taken as a whole, the policy provides coverage for all kinds of accidents and incidents that do not occur on the premises. ADF ADF¶25.

Second, the term "accident" is both undefined and ambiguous. California law requires ambiguous terms within an insurance policy to be construed against the insurer. Consistent with USLI's approach to interpreting the contractor and pollution exclusions, huge swaths of coverage would be eliminated based upon USLI's patently unreasonable interpretation. Moreover, USLI could have used the Insurance Services Organization's definition of accident that required both the cause of the accident and the resulting bodily or property damage to occur on the premises, but USLI chose not to. ADF¶25. As such, the ambiguity that USLI created should be construed against USLI, and the premises limitation endorsement should not preclude coverage in this case.

**IV.**

**CONCLUSION**

For all of the reasons set forth above, this Court should deny USLI's motion for summary judgment.

Dated: March 19, 2021

LAW OFFICES OF NEIL R. ANAPOL

By:_________________

Neil R. Anapol
Attorneys for plaintiff Agnes Itzhaki, Rontal Development, LP, and Rontal Development, LLC

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

Law Offices of Neil R. Anapol
2550 Hollywood Way, Suite 202
Burbank, California 91505
(818) 566-7355
FAX (818) 566-7875

# PROOF OF SERVICE

I, the undersigned, am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is **2550 Hollywood Way, Suite 202, Burbank, California 91505.**

On March 19, 2021 I served the foregoing document entitled PLAINTIFFS AGNES ITZHAKI, RONTAL DEVELOPMENT, LP, AND RONTAL DEVELOPMENT, LLC'S OPPOSITION TO UNITED STATES LIABILITY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND ATHORITIES; DECLARATION OF AGNES ITZHAKI; DECLARATION OF CAROLINDA FLEMING; DECLARATION OF RANDLE FRANKEL; DECLARATION OF AMATO EVAN; DECLARATION OF CHARLES MILLER on all the appearing and/or interested parties in this action by placing the original and/or a true copy thereof enclosed in sealed envelope(s) addressed as follows:

ILYA A. KOSTEN
BARBANEL & TREUER, P.C.
1925 Century Park East, Suite 350
Los Angeles, California 90067

ikosten@btlawla.com
Telephone: (310) 282-8088
Facsimile: (310) 282-8779
[Attorneys for Defendant United States Liability Insurance Company]

☒ **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed March 19, 2021 at Los Angeles, California.

Neil R. Anapol
Print Name

Signature